**SMITH v. UNITED STATES.**
No. 5487.

Circuit Court of Appeals, Fourth Circuit.
July 29, 1946.
Writ of Certiorari Denied Nov. 12, 1946.
See 67 S.Ct. 189.

Hayden C. Covington, of Brooklyn, N. Y. (Curran E. Cooley, of Anderson, S. C., and Grover C. Powell, of Atlanta, Ga., on the brief), for appellant.

Irving S. Shapiro, Atty., Department of Justice, of Washington, D. C., and Claud N. Sapp, U. S. Atty., of Columbia, S. C. (Henry H. Edens, Asst. U. S. Atty., of Columbia, S. C., and Robert S. Erdahl, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This case returns to this court after a sentence of imprisonment for three years and six months was imposed upon the defendant in the District Court for violation of § 11 of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 311 by refusing to submit to induction in the armed forces of the United States after he had been classified 1-A and ordered to report for induction by his local board. A prior conviction for failing to report for induction affirmed by this court, was reversed by the Supreme Court. In the earlier case we relied upon the interpretation of the Act announced in Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, as it was generally understood by the Courts. See Smith v. United States, 4 Cir., 148 F.2d 288; Estep v. United States (Smith v. United States), 66 S.Ct. 423, 435.

The refusal of the defendant to submit to induction is not disputed. At the trial in the District Court it was stipulated that on September 30, 1943, after undergoing the selective process and the screening process of the armed forces at the induction station, the defendant was accepted for training in service in the United States Army and was ordered to undergo the induction process ceremony but refused to submit to induction and was thereafter released and charged with violation of the Selective Training and Service Act of 1940.

Consequently the only controverted issue at the trial related to the legality of the induction order. The rule applicable to that matter was finally established in the Estep-Smith cases where it was held that upon the trial of a registrant for refusing to submit to induction, judicial review is limited to a determination of whether or not the Draft Board exceeded its jurisdiction; and loss of jurisdiction may occur if the board proceeds arbitrarily and without due regard to the rights of the registrant or makes a classification without basis of fact to support it. The court, however, made clear that if the findings of the board are supported by evidence, they are not reviewable and must be accepted as final even though they may be erroneous.

The principal defenses urged on this appeal are that the District Court should have directed a verdict for the defendant (1) because there was no evidence to support the finding of the board that the defendant was not a minister entitled to exemption from the draft under § 5 of the Act, 50 U.S.C.A.Appendix, § 305, and (2) because the board in violation of Regulations 623.2, 625.2(b) and 627.13 prescribed by the President under § 10 of the Act, 50 U.S.C.A.Appendix, § 310, denied the defendant due process by failing to reduce to writing and to include in the record on the appeal to the board of appeal and to the President of the United States certain oral evidence offered by the defendant in his appearance before the board.

The proceedings before the local board and the evidence presented to it in support of the defendant's claim to exemption as a minister of religion may be summarized as follows: Smith registered with the local board in Columbia, South Carolina on December 24, 1942. On January 29, 1943 he filed his selective service questionnaire in which he stated that he was born October 4, 1924; that he had eight years of elementary schooling and three years of high school and had completed one and one-half years in the study of engineering at the University of South Carolina and had had four years of a home study course for the ministry. He stated that his occupation at the time was majoring in engineering preparatory to a B.S. degree with the intention of taking an examination for a license in engineering. Under the heading of occupational experience, qualification and preferences he stated that his usual occupation or the one for which he was best fitted was the ministry; that the kind of work done is shown in Acts 20:20 and Luke 8:1 in the Bible. He asserted that he was not licensed in a trade or profession but preferred the ministry; that he had been a minister of Jehovah's Witnesses since September, 1938, that is, since he was 14 years of age, and that he had

been formally ordained scripturally in September, 1938 as shown by Luke 20:1, 2; John 17:14 and Isaiah 61:1. In addition he said that he was conscientiously opposed by religious training and belief to participation in war and he requested a special form for conscientious objectors to be completed and returned to the local board for consideration. In view of these facts the defendant expressed the opinion in the questionnaire that he should be put in Class 4-D as a minister of religion under the provisions of § 622.44 of the Regulations.

On February 8, 1943, the defendant filed the special form for conscientious objectors in which he reiterated his claim to be a minister. He stated that by reason of his religious beliefs he could not conscientiously bear arms; and that his belief was founded on the Bible which he had studied in well organized classes for four years under the direction of the Watchtower Bible & Tract Society of Brooklyn, New York. He added that he had devoted on the average twenty hours per week for the last four years studying and preaching the gospel of God's kingdom as set forth in the Bible. He stated that he had been a member of the religious sect known as Jehovah's Witnesses since 1938; that the church or congregation which he customarily attended was Kingdom Hall, West Columbia, South Carolina; and that the name of the pastor or leader of the church was H. L. Crout (company servant).

In addition to these documents the defendant filed with the board two affidavits signed and sworn to by about forty-six persons stating that he was a duly ordained minister of religion in the sect of Jehovah's Witnesses; also an occupational questionnaire stating that he was studying engineering at the University of South Carolina and that the completion of the course was indefinite; that he was also studying ministry at home and that he had been in the ministry for four years beginning in 1938 going from door to door and preaching to the people. He also filed a copy of an opinion No. 14 (amended) from National Headquarters of the Selective Service System which showed that the unincorporated body of persons known as Jehovah's

Witnesses was considered to constitute a recognized religious sect and that certain members of the organization stood in a relation thereto and to the other members similar to that occupied by regular or duly ordained ministers of other religions.

On April 2, 1943 the defendant was placed in Class 1-A by the local board and received notice of his classification on April 6. He requested a personal appearance and was granted one on April 12. He undertook to demonstrate orally from notes in his possession that he was a minister, whereupon he was asked whether he had these matters written down and when he replied in the affirmative he was told that he need not quote scripture but to file the papers and that the Board would look them over. Thereafter on May 18, 1943 the Board changed his classification from Class 1-A to Class 1-A-O, thereby making him liable for limited training and service as a conscientious objector. The defendant again requested and was granted a personal appearance before the local board on May 25, 1943. The minutes of the local board show that at this meeting there was a lengthy discussion and after due consideration the board unanimously again classified the defendant in Class 1-A. At that time he withdrew his claim to be classified as a conscientious objector.

The testimony as to what occurred at this meeting is of importance because it bears upon the contention of the defendant that he was deprived of due process by reason of the failure of the local board to include what occurred at the meeting in the record of the appeal of the case to the board of appeal. The defendant testified in the court below that at the hearing on May 25, 1943 he went through his selective service file and pointed out that he was claiming classification as a minister of religion and that he was attending college because his father insisted. He explained to the Board that his training and rearing were in the ministry and the work that he did in the ministry was preaching from house to house and preaching in the congregation, and that his intentions at the time were to put his full time in the ministry. He stated that when he was a child his grandparents and mother indoctrinated

him in the teachings of Jehovah's Witnesses and that he attended congregational schools and engaged in door to door preaching; that he regularly studied the Bible at home, took the prescribed course of study of the sect and was ordained; that he wanted to go into the full time ministry upon completing high school but had gone to college at his father's insistence; that he had continued to devote so much of his time to ministerial work that he was flunking his engineering courses and that he intended at the end of his second semester to quit the college and devote his full time to missionary evangelical work. He also stated that he was an assistant to the presiding minister and delivered sermons encouraging a greater participation in the work of publicly preaching the gospel of the kingdom.

It thus appears that there was evidence before the jury that at the hearing before the local board on May 25, 1943 the defendant repeated his former testimony and presented reasons for classification as a minister additional to those stated in the documents which had been previously filed with the board. Especially he emphasized his early training in the teachings of the sect, his services as an assistant to the minister of his congregation, his attendance upon the engineering course against his will in order to satisfy his father's wishes, his devotion of a considerable part of his time to the work of the ministry to the detriment of his college work and his attention in the near future to quit the college and devote his full time to missionary work.

This testimony was not directly controverted by witnesses on behalf of the United States. The only testimony in respect thereto was brought out on cross examination by defendant's counsel of the chairman of the local board. He stated that he did not recall that the defendant on May 25th said that he was going to quit college and give his full time to the ministry. The chairman further testified that on May 25th there was a full attendance of the board and that the defendant was given as long a hearing as it was possible to give. No written record was made of the statements or testimony of the defend-

ant on May 25th and no reference thereto was included in the record subsequently sent by the local board to the board of appeal.

At the close of the hearing on May 25th the defendant was informed by the local board that his classification in 1-A would be continued. He then filed a written notice of appeal. The board of appeal classified him in 1-A on June 15, 1943. One member of the board dissented so that under the Regulations § 628.2 the defendant had the right to appeal to the President. He filed such an appeal and on July 23, 1943 the President placed the defendant in Class 1-A and gave notice to him on August 8, 1943.

Thereupon the defendant collected additional letters, affidavits and petitions from ministers and other persons and from the Watchtower Society stating that he was an ordained minister of the gospel and submitted these papers with two additional affidavits of his own to the local board through the government appeal agent on September 7, 1943; but the local board declined to reopen the classification. The defendant requested and was granted a hearing on September 14, at which he summarized the evidence in support of his claim to exemption. He stated that he was then devoting his entire time to missionary and evangelistic work and was acting as assistant minister and delivered sermons to the congregation. The board again declined to reopen the classification. The minutes of the board for that day show that it considered the newly submitted evidence but declined to reopen the case because the evidence was merely a repetition of the evidence already considered by the board and by the board of appeal and by the President. Whether or not this action was arbitrary and capricious is one of the subsidiary questions in the case. On September 18th the local board ordered the defendant to report for induction on September 30th. The defendant was taken forcibly to the induction station at the insistence of his father and there completed the selective screening process and was accepted, but refused to submit to induction.

When all of the evidence presented to the board is considered, it is obvious that there was substantial ground for denying the defendant's claim for exemption. It cannot be said that there was no evidence to show that the defendant was not a minister and hence the District Judge properly refused to direct a verdict for the defendant on this ground. We think that Amended Opinion No. 14 issued by the Director of Selective Service on November 2, 1942 and State Director Advice No. 213-B issued by the Director on June 7, 1944 correctly set out the rule to be followed by the board in determining whether a member of the sect of Jehovah's Witnesses is entitled to the status of a regular or duly ordained minister exempt from the draft under § 5(d) of the statute and § 622.44 of the Selective Service Regulations. In the State Director Advice the Director General said:

"Whether an official of the Jehovah's Witnesses group stands in the same relationship to this group as a regular or duly ordained minister in other religions must be determined in each individual case based upon whether he devotes his life in the furtherance of the beliefs of Jehovah's Witnesses, whether he performs functions which are normally performed by regular or duly ordained ministers of other religions, and finally, whether he is regarded by other Jehovah's Witnesses in the same manner in which regular or duly ordained ministers of other religions are ordinarily regarded."

See also the discussion of this subject in the concluding portion of the opinion of this court filed contemporaneously herewith in Sunal v. Large, Superintendent, 157 F.2d 165.

As we said when the defendant was first before us, Smith v. United States, 4 Cir., 148 F.2d 288, 292, it was for the board to say whether this youth of eighteen years of age was actually a regular or duly ordained minister of religion and had been such since his fourteenth year, or, on the other hand, was a college student pursuing a course in engineering with the intent of securing an engineer's license.

Nor do we think that a verdict for the defendant should have been directed on the ground that the board's refusal to reopen the case in September, 1943 at the request of the defendant was so arbitrary and unreasonable as to amount to a denial of due process. It is contended that the case should have been reopened upon the new affidavits then presented because they supplemented the written record and tended to show that the defendant's status had changed since he had given up his college course and was devoting his entire time to ministerial work; and it is pointed out that it is the status at the time of classification and not at the time of registration which determines the classification. United States v. Stalter, 7 Cir., 151 F.2d 633; Bowles v. United States, 319 U.S. 33, 63 S.Ct. 912, 87 L.Ed. 1194. It must be borne in mind, however, that the additional affidavits submitted in September were largely cumulative and that the mere cessation of college work after the end of the spring semester and after the defendant had been drafted was not proof positive which the board was bound to accept that the defendant had become a regular and ordained minister at that time, whatever he may have been in the spring. Whether or not the additional evidence was of sufficient weight to require a reopening of the case lay within the discretion of the board and it cannot be said under the circumstances that the discretion was arbitrarily exercised. See Cramer v. France, 9 Cir., 148 F.2d 801; United States v. Commanding Officer, etc., 2 Cir., 142 F.2d 381.

The defendant contends that the induction order was not issued in the manner prescribed by the regulations and hence was void and of no effect. The order was signed by the clerk of the local board and not by the board or any of its members. When the order was issued on September 18, 1943 Regulation 603.59 provided that official papers might be signed by the clerk "by direction of the local board", if authorized to do so by a resolution duly adopted by and entered in the minutes of the board. In this instance the board at the beginning of its activities authorized the clerk to sign

induction orders on its behalf, but the resolution was not entered on the minutes. We do not think that this omission deprived the board of jurisdiction in the defendant's case. There is no doubt that the defendant's classification and induction order were authentic actions of the board taken after prolonged and careful consideration; and the defendant was in no way injured by the board's disregard of a directory administrative detail in the performance of its duties. See United States v. Drum, 2 Cir., 107 F.2d 897, 129 A.L.R. 1165, certiorari denied 310 U.S. 648, 60 S.Ct. 1098, 84 L.Ed. 1414.

A more difficult question arises in connection with the sufficiency of the record which the local board sent up to the board of appeal. The regulations require that every paper pertaining to the registrant, except his registration card, shall be filed in his cover sheet. § 615.43. Oral information shall not be considered unless it is summarized in writing and the summary placed in the registrant's file. Under no circumstances shall the local board rely upon information received by a member personally unless such information is reduced to writing and placed in the registrant's file. § 623.2. The registrant may present such further information as he believes will assist the local board in determining his proper classification. Such information shall be in writing or, if oral, shall be summarized in writing and, in either event, shall be placed in the registrant's file. § 625.2(b). Section 627.13(a) provides as follows:

"Immediately upon an appeal being taken to the board of appeal, the local board shall carefully check the registrant's file to make certain that all steps required by the regulations have been taken and the record is complete. If any facts considered by the local board do not appear in the written information in the file, the local board shall prepare and place in the file a written summary of such facts. In preparing such a summary the local board should be careful to avoid the expression of any opinion concerning information in the registrant's file and should refrain from including any argument in support of its decision."

■ These regulations clearly require that the record of a registrant on appeal to the board of appeal shall contain a written summary of all the facts considered by the local board in making its classification; and since the conclusions of the board of appeal are necessarily based upon the written record, omission of material facts deprives the registrant of his right to an adequate consideration of his case on appeal and amounts to a denial of due process by the local board which invalidates its classification and order of induction into the armed services. The District Judge reached this conclusion and instructed the jury in substance that it was the duty of the local board to reduce to writing any additional facts presented by the defendant to the board on May 25, 1943 as to his standing as a minister and to place the writing in the file for the use of the board of appeal and the President in passing upon the classification of the defendant, and that if the board failed in this respect its failure would deprive the defendant of his right to a full hearing upon appeal and entitle him to a verdict of not guilty.

■ The defendant contends that the evidence shows conclusively that the board did fail in its duty in making up the record on appeal in the manner indicated and that the judge should have directed a verdict for the defendant. We do not agree with this contention because questions of fact were for the jury and it was for them to decide whether the defendant actually gave additional facts which were not included in the record. In this connection it is worthy of note that the defendant on May 26, 1943, after taking the appeal, wrote to the appeal board himself and set out at least some of the facts which according to his testimony he gave to the local board in the hearing on May 25. In his letter to the appeal board he said that the only reason that he had not put full time into the ministerial work was that his father had requested him to go to college and he obeyed, but that it was his intention at the completion of the semester to become a pioneer and devote his full time to the work of the ministry.

■ The point, however, is not of practical importance at this time because, for

reasons to be given presently, the judgment must be reversed and it may be that upon a new trial the evidence on the point will be more fully developed. It is sufficient to say at this time that unless the facts in respect to the question under consideration are admitted or are so fully proved as to admit of no doubt, the judge should instruct the jury in the words of the regulation that if the facts considered by the local board did not appear in the written information in the file, it was the duty of the local board to prepare and place in the file a written summary of the facts, and if the jury should find that the board failed in this duty and that evidence material to the decision was withheld from the board of appeal, the order of induction was void and the verdict of the jury should be for the defendant.

The government contends that any deficiency in the record on appeal was immaterial and gave the defendant no right to complain because he had the power himself to correct the record under the provisions of § 627.12 of the Selective Service Regulations which provide that a registrant who takes an appeal to the board of appeal "may attach to his notice of appeal or to the Selective Service questionnaire (Form 40). a statement specifying the respects in which he believes the local board erred, may direct attention to any information in the registrant's file which he believes the local board has failed to consider or give sufficient weight, and may set out in full any information which was offered to the local board and which the local board failed or refused to include in the registrant's file." In our opinion this regulation does not relieve the local board of its duty in the premises or mitigate the consequences of a failure on its part. The regulation confers a privilege but does not impose a duty upon the registrant; for it cannot be supposed that Congress intended to deal with registrants as if they were engaged in formal litigation, assisted by counsel, and therefore charged with the obligation to examine and approve a record on appeal.

We think, however, that there was prejudicial error in rulings of the District Judge during the course of the trial with respect to the bearing of a conscientious objection to military service upon the credibility of the believer. During the cross examination of a witness, who was testifying that the defendant had engaged in ministerial activities and duties, the witness was asked whether he believed it right to fight, and the judge, in overruling an objection to the question, stated that in establishing the credibility of the witness it was very important to know whether he served his country or not. Again, at the conclusion of the case the defendant requested the court to instruct the jury that in passing upon the question of whether the defendant was a minister, they should not consider the fact that he was a conscientious objector. The judge refused the request stating in the presence of the jury that they had the right to consider whether or not the defendant claimed the conscientious objection in considering his credibility.

No argument is needed to show that this ruling was erroneous. See Girouard v. United States, 66 S.Ct. 826. Nor can it be doubted that it tended to prejudice the defendant in the eyes of the jury since he had formerly claimed the status of conscientious objector and had abandoned the claim, although not the belief, in order to secure the complete exemption pertaining to the ministerial status. It was the position of the government throughout the trial that the defendant was trying to avoid his duty to the country by presenting the spurious claim that he was a minister of religion, whereas he was in truth a college student in engineering. His sincerity and credibility were directly in issue, and it was harmful to him to inject into the controversy the idea that religious scruples against bearing arms may be incompatible with a regard for the truth.

The significance of this ruling was increased by the wide scope which was given to the trial, erroneously we think, by the District Judge. He was of the opinion that the trial should not be confined to the regularity of the proceeding before the local board and the validity of the order of induction, but that the jury might itself decide whether the defendant was a minister

and might acquit him if they so found, irrespective of the action of the board. In reaching this conclusion he relied upon passages in the opinion in the Estep case which show that the power of a local board is limited by the statute and the regulations; and if the board orders a person to report for induction who is exempt, its action is lawless and beyond its jurisdiction. There are decisions which hold that facts essential to the jurisdiction of an administrative board are reviewable by the courts, e.g., Crowell v. Benson, 285 U.S. 22, 52 S. Ct. 285, 76 L.Ed. 598; and the judge concluded that the ministerial status of the registrant in the pending case was a jurisdictional question to be passed on by the jury.

Accordingly, he instructed the jury over the government's objection that the first and most important question that they must decide was whether the defendant was a regular or duly ordained minister of religion, and that the second question was whether the local board gave the defendant a proper hearing and fair treatment and carried out the terms of the statute and regulations. In short, it was for the jury to say whether the defendant was a minister and whether the board properly classified him under the statute. In harmony with this interpretation of the Act the judge permitted the defendant, in addition to the documentary evidence considered by the board, to introduce a number of witnesses who did not testify before the local board but testified in the District Court in support of the defendant's claim that he was a minister of religion entitled to exemption. This position was incorrect for it is clearly shown by the following passage from the opinion in the Estep case, 66 S.Ct. 423, 427, that the board's finding as to a jurisdictional fact is binding on the court unless there is no evidential basis for it. The court said:

"* * * Sec. 11, being silent on the matter, leaves the question of available defenses in doubt. But we are loathe to resolve those doubts against the accused. We cannot readily infer that Congress departed so far from the traditional concepts of a fair trial when it made the actions of the local boards 'final' as to provide that a citizen of this country should go to jail for not obeying an unlawful order of an administrative agency. We are loathe to believe that Congress reduced criminal trials under the Act to proceedings so barren of the customary safeguards which the law has designed for the protection of the accused. The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave to the registrant. See Goff v. United States, 4 Cir., 135 F.2d 610, 612."

See also, United States v. Stalter, 7 Cir., 151 F.2d 633, 634.

It is true that the defendant was not free from blame in this respect since his attorney accepted the judge's view without protest, offered the additional evidence above referred to, and secured an instruction from the District Judge that it was the duty of the jury to determine whether the defendant was a minister; and in making such determination, they were not confined to evidence received by the Draft Board, but might consider also any other evidence received at the trial; and if the jury found that the defendant was a minister within the meaning of the Act, he could not be convicted under the indictment. Hence it may be argued, as was held in Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704, that a new trial should not be granted for an error in which the defendant not only acquiesced but actively participated. Moreover, it may be contended that the defendant was actually benefited by the ruling since he was not confined to a review of the finding of the board, but was given an opportunity to try the case de novo on its merits and win a verdict if he

could convince the jury that his claim was well founded. But in our view, the theory on which the case was tried was so fundamentally wrong that we should take notice of the mistake of our own motion, even in the absence of an exception below, as was done in Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495. In reaching this conclusion we are moved not only by the need to direct the course of the new trial which must follow, along proper lines, but also by the probability that the jury felt free to decide the case as if they were the sole judge of the merits of the defendant's claim and hence to ignore the right of the defendant to an acquittal if they found that the local board had failed to follow the terms of the statute. Since the jury was told that they must acquit the defendant if they found that he was a minister of religion, they probably concluded that it was their duty to convict him, if they came to the conclusion that he did not possess this status. And it is certainly true that the trial of the case on its merits gave the government an opportunity of which it was not slow to avail itself, to attack the credibility of the defendant and to suggest that he was endeavoring unjustly to escape the duty to fight for his country.

The defendant offered thirty-five requests for instructions to the jury which cover forty pages of the printed record; and he complains that some of them were rejected and some were granted in an altered form. Many of them were prolix, argumentative and repetitious. The District Judge would have been justified in rejecting them all and covering the material points in his own language in his charge to the jury. It would be useless to examine these prayers at this time since the need for many of them will be eliminated in the more restricted scope of the new trial and the attention of the jury can be directed to the specific issues in controversy.

Reversed.