UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Thomas MULLOY, Defendant-
Appellant.

No. 18709.

United States Court of Appeals
Sixth Circuit.

June 10, 1969.

Robert A. Sedler, Lexington, Ky., for appellant.

Philip Huddleston, Louisville, Ky. (Ernest W. Rivers, U. S. Atty., Philip I. Huddleston, Asst. U. S. Atty., Daniel O. Omer, Col. JAGC General Counsel, Selective Service System, Clarence R. Harris, Col. QMC Field Attorney, Selective Service System, on the brief), for appellee.

Before WEICK, Chief Judge, CELEBREZZE and McCREE, Circuit Judges.

WEICK, Chief Judge.

Appellant Mulloy was convicted in the United States District Court of wilfully refusing to submit to induction into the Armed Forces, in violation of Military Selective Service Act of 1967. 50 U.S.C. App. § 462(a). A sentence of five years' imprisonment and a fine of $10,000 were imposed.

Appellant contends that the grand jury and the petit jury were improperly constituted; that the Universal Training Service Act as amended in 1967 is unconstitutional; and that the Vietnam war is illegal. These same contentions were made in United States v. Pratt, 412 F.2d 426 (6th Cir. 1969), which case was consolidated for argument with this one. For the reasons and upon the authority relied upon in *Pratt,* we reject these contentions.

Appellant further contends that his procedural rights were violated by the refusal of his Local Board to reopen his classification of 1–A (available for military service) which was granted to him by the Appeal Board. He asserts that this was arbitrary and unreasonable and constituted an abuse of discretion; and that it deprived him of a second administrative appeal and violated his constitutional rights.

Mulloy registered for the draft on June 13, 1962. He filed his Classification Questionnaire (SSS Form 100) on June 17, 1963. He did not at that time request an exemption as a conscientious objector. On November 22, 1963 his Local Board classified him 2–S (college student), which classification remained for four years. After leaving college he was employed by the Appalachian Volunteers, operated by the Office of Economic Opportunity, and was granted a one-year occupational deferment by the Board. Upon expiration of this deferment, he requested another occupational deferment so that he could continue his work with the Volunteers, but the Board on May 17, 1967, in accordance with its policy in such cases to limit deferment to one year, denied his request and classified him 1–A.

On May 17, 1967 Mulloy was ordered to report for a physical examination. On May 19th he wrote a letter appealing to the Board to review and reconsider his request for an occupational deferment. On June 26th he was found qualified at the Armed Forces Examining Station and was notified of his acceptability by Statement of Acceptability (DD Form 62). The Board wrote Mulloy on July 3, 1967, asking whether he wanted it—

" * * * to first review your file and then forward it to the Appeal Board or simply forward to the Appeal Board only * * *."

He replied that he—

" * * * appealed the classification on the grounds of occupation and asked for a renewal of my 2–A deferment. * * * Please do what is necessary to reconsider my classification."

On July 17, 1967 the Board issued an order to Mulloy to report for induction. He then requested that his appeal be forwarded to the Board of Appeal and also asked for a personal appearance. The Board denied his request for personal appearance because the request had not been made within thirty days after classification, as required by the regulation (32 C.F.R. § 1624.1(a)). Although his right to appeal had expired, and because of an apparent misunderstanding, the Board forwarded his file to the Appeal Board and cancelled the order to report for induction. On August 16, 1967 the Appeal Board classified him in 1–A by a 5–0 vote.

On September 5, 1967, the Board received a letter from Mulloy advising that he was under arrest and out on bail, charged with sedition for teaching and advocating the violent and forceful overthrow of the United States Government and the State of Kentucky. On September 21, 1967 the Board issued an order to report for induction on October 16, 1967. This was the second induction order. On October 9th the Board received another letter from him advising that he was still under a $5,000-bond in the U. S. 6th District Court and also un-

der a $500-bond to the Pike County Court "on the charge of flourishing a deadly weapon. I request that you cancel that induction order * * *."

On October 12, 1967 the Board cancelled the second order to report for induction and advised Mulloy by letter of its action. On the day after he was scheduled to report for induction under the cancelled order, he wrote to the Board asking for "A Conscientious Objector Application Form", which was supplied to him. He returned it to the Board with attachment thereto on October 30, 1967. In his letter enclosing the form he stated that his lawyer advised that he was still under bond to the Federal Court in Lexington and "I request a personal interview with my Board to discuss my appalachian."

The Board replied by letter advising him that his appeal rights and personal appearance time had both expired but that it was granting him a personal appearance through courtesy. 32 C.F.R. § 1625.1(c).

Mulloy appeared at the meeting. The Board received and placed in his file a number of letters in support of his request. The Clerk of the Board prepared a résumé of his appearance and placed it in his file. The résumé indicates that the Clerk was instructed to write to the Federal Court in Lexington to inquire concerning his appeal and bond. The résumé further stated:

"Until such time as a reply is received, the members would not consider him a C.O."

An entry was made on his Classification Questionnaire on November 9th, stating "Classification was not reopened."

On November 17, 1967, the Board received a letter from Mulloy in which, among other things, he stated:

"This brings us to the war in Vietnam and my draft situation. I do not question individual integrety [sic] or your right by law to do what you do. I do however believe that every citizen has the duty of dissent, even resist-ance, regarding acts which violate his conscience

\* \* \* \* \* \*

"Since I believe my country's course to be wrong in Vietnam, I feel that I would be serving my country's best interests, now and in the future generations, to follow my conscience.

"I feel that you are going to try to draft me anyway, regardless of my feelings. *I have not made up my mind as yet.* If I decided to go into the Army I will of course do everything in my power to teach my fellow soldiers the truth about Vietnam and Non-violent principles. I will actively organize resistance. *If I choose not to go into the Army I will resist induction and make the biggest stink about it possible.* I must do this to bear witness to my beliefs and to cause my fellow citizens to think. \* \* \* " [Italics ours]

By letter dated December 2, 1967, Mulloy advised the Board that he had been "fired" by the Appalachian Volunteers "for stating that I am a C.O. and would refuse induction if ordered"; and that as far as he knew he was still under bond to the Federal Court.

On December 6, a letter from the Clerk of the District Court at Lexington was placed in his file which stated that Mulloy was recently a plaintiff in a civil action filed on the Pikeville Docket, but that the Clerk had "no information of his ever being a defendant in a matter in this court either civil or criminal."

On January 3, 1968, Mulloy wrote to the Board stating that he was now employed by the Southern Conference Educational Fund in Louisville and was working on a book "about my experience with the Poverty War in Appalachia"; and that the sedition charges had been dropped and the bond released. He was not sure about the Pike County peace bond.

On January 19, 1968, he was advised by letter from the Board that his file had been reviewed at its meeting held on January 11th, and that the members felt that the information in his file did not

warrant a reopening of his classification. On January 21, Mulloy wrote to the Board appealing from the Board's failure to reclassify him 1–O. He stated that he considered the November interview a reopening of his case. The Board wrote in reply two days later that it did not consider the courtesy appearance as a reopening of his case since his time for appeal and personal appearance had expired. He was ordered to report for induction on February 23, 1968, but refused to submit.

Selective Service Regulation 32 C.F.R. § 1625.2, entitled "When Registrant's Classification May Be Reopened And Considered Anew," provides in part that the Local Board may reopen and consider anew the registrant's classification upon written request of the registrant—

"* * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification."

Selective Service Regulation 32 C.F.R. § 1625.4, entitled "Refusal to Reopen And Consider Anew Registrant's Classification," provides in part:

"* * * [E]ven if new facts are presented, [when] the Local Board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification."

■ Under Regulation 1625.2 the Board has discretion to determine whether or not it will reopen a classification, but Regulation 1625.4 appears to be mandatory in that the Board *shall not* reopen the classification when it is of the opinion that the facts, if true, do not justify a change in the classification.

In Smith v. United States, 157 F.2d 176 (4th Cir. 1946) Judge Soper, who wrote the opinion for the Court, said:

"Whether or not the additional evidence was of sufficient weight to require a reopening of the case lay within the discretion of the board and it cannot be said under the circumstances

that the discretion was arbitrarily exercised." *Id.* at 181.

*Smith* was followed by the Seventh Circuit in United States v. Bartelt, 200 F.2d 385, 389 (7th Cir. 1952).

■ Mulloy contends that in determining whether to reopen the classification the Board was limited to consideration of only the Special Form For Conscientious Objector (SSS Form 150). In our judgment, the Board had not only the right but also the duty to consider not only the form but also the attachment thereto, the letters received in connection therewith and the entire file. This is implicit in the holdings of the Second Circuit in the two Gearey cases. United States v. Gearey, 368 F.2d 144 (2nd Cir. 1966); United States v. Gearey, 379 F.2d 915 (2d Cir. 1967).

In *Gearey*, the Board considered on the merits the request to reopen a classification after an order to report for induction, and the Court held that there was a rational basis for the Board's determination that the registrant was not a genuine conscientious objector and the Board therefore was not required to reopen his classification.

Appellant's contention, if upheld, would result in interminable delays in proceedings before Local Boards and indeed might frustrate the operation of the Selective Service System.

"As the Tenth Circuit has pointed out, religious 'conversions' of convenience might well upset the orderly administration of the selective service system." United States v. Taylor, 351 F.2d 228, 230 (6th Cir. 1965).

Under Mulloy's contention, all a registrant needs to do is to state facts in support of his application and the Board is limited to his statement. In our judgment, the facts stated must be true and the Board has the power to investigate and determine the truth. Suppose a registrant who is classified 1–A requests the Board to reopen his classification and place him in 3–A, alleging that he is living with and supporting his wife and family. If appellant's allegations were

true, the Board would be obligated to re-open his classification and reclassify him. Townsend v. Zimmerman, 237 F. 2d 376 (6th Cir. 1956). However, the Board, under the investigative powers granted to it in 32 C.F.R. § 1625.1(c), may learn that the allegation was false. Is the Board nevertheless required to re-open his classification and reclassify him? We say, "No."

The Military Selective Service Act of 1967 omitted the provision contained in the 1940 Act for referral to the Department of Justice of conscientious objectors' claims, including the provision for appeal to the Appeal Board of Local Board action denying conscientious objector classification.

The legislative history of the statute indicates Congressional concern for "unusually long and unnecessary delay in processing cases in the Department of Justice." H.R. No. 267, 90th Cong., 1st Sess. 1308, 1333–1334 (1967). Congress was also of the belief that the decision of the Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L. Ed.2d 733 (1965), had broadened the basis on which conscientious objection could be made, and resulted in an increase of administrative appeals and delays. The definition was changed so that conscientious objection must be based solely on religious training and belief, not including "essentially political, sociological, or philosophical views, or a merely personal moral code." 50 U.S.C. App. § 456(j).

Mulloy's letter dated November 17, 1967, from which we have quoted, indicated rather clearly that his objection to serving in the Armed Forces wasf based on essentially political, sociological or philosophical views and his conscience rather than on religious training and belief. He even indicated at that late date that he had not made up his mind as to whether he would go into the army. The letters which he wrote to the Board revealed that he was principally interested in an occupational deferment.

██ Furthermore, the Board had the right to consider inconsistent statements made by the registrant as well as any fact which cast doubt on his veracity. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

The Chairman of the Local Board testified in Court that the Board's decision was based on all information available including the file and what he said. He further testified that Mulloy's claim for deferment was based principally upon his job. He testified:

"His claim, taking everything, assuming everything he said down there at that time to be so, he still did not make out a case for conscientious objection and, therefore, we saw no reason to reopen. the case, because it wasn't there."

██ The Act provides that classification orders of the Board shall be final. 50 U.S.C.App. § 460(b) (3). The Courts have limited the scope of judicial review to a determination of whether there is basis in fact for the classification. United States v. Seeger, *supra;* Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); United States v. Jackson, 408 F.2d 1000 (6th Cir. March 24, 1969); United States v. Beatty, 350 F.2d 287 (6th Cir. 1965), cert. denied, 382 U. S. 1028, 86 S.Ct. 651, 15 L.Ed.2d 541. Mulloy relies upon Miller v. United States, 388 F.2d 973 (9th Cir. 1967) and United States v. Freeman, 388 F.2d 246 (7th Cir. 1967), which cases were decided under the 1940 Act and involved different facts. We regard the cases as inapposite.

In considering whether to reopen the classification, the Board had the right to take into account the original questionnaire filed by appellant in June, 1963. In Series VIII of that form under the heading of Conscientious Objector he printed: "Does Not Apply." Since his registration in 1962 he had been granted five years' deferments for college and occupation, an appeal before the Appeal Board, the cancellation of two orders to report for induction, and then when time was running out for him, he claimed for

the first time on October 30, 1967, that he was a conscientious objector. Even then he was still maintaining that he should be classified in 2–A because of his work in Appalachia, and he had not made up his mind as to whether he would go into the army.

A letter written to the Board by his brother, Robert, while disagreeing with Mulloy's position, stated:

> "I believe my brother to be sincere concerning his feelings and he has maintained this position for a number of years."

If this were true, why did he wait so long to inform the Board?

It would further appear that what he wrote to the Board about being under a $5,000-bond in the Federal Court was not correct.

 We are of the opinion that there was a rational basis for the Board's determination that Mulloy had not established a case of conscientious objection, and that the Board did not abuse its discretion in denying his request to reopen his classification. In our judgment, he did not make out a prima facie case of conscientious objection, and the additional information that he supplied did not justify a change in his classification. United States v. Jackson, *supra*. His claim to conscientious objection did not fool the Board nor the District Judge who, in sentencing him, said:

> "It is the observation of this court that in the trial of this matter you have worn out pretty well the claim of conscientious objector, which I think the record should reflect you did not assert for many, many months.[1]
>
> "In other words, in my judgment, you have suffered an instant conversion when you realized that the platoon sergeant was about to blow his whistle."

In our judgment, the courtesy hearing granted did not constitute a reopening of the classification. Other claims of error have been considered and are insufficient to warrant reversal.

The sentence of the court would appear to us to be rather severe. We do not have before us the presentence investigation which may have justified it. The District Court will have an opportunity to consider reduction of the sentence if request is made under Rule 35 of the Federal Rules of Criminal Procedure.

Affirmed.

McCREE, Circuit Judge (concurring).

I concur in the result. Selective Service Regulation 32 C.F.R. § 1625.2 vests broad discretion in the Local Board, and since the Board was justified in considering the entire file (instead of being confined solely to appellant's conscientious objector application), I do not regard the decision not to reopen appellant's file as an abuse of that discretion. Accordingly, I find it unnecessary to consider the philosophical contours of conscientious objection in this appeal. I agree with the majority's statement questioning the propriety of imposing the maximum possible sentence in this case.