UNITED STATES of America ex rel.
Donnell Leonard LUSTER,
Petitioner-Appellant,

v.

Colonel William H. McBEE, Respondent-
Appellee.

No. 17742.

United States Court of Appeals,
Seventh Circuit.

Feb. 9, 1970.

Anthony J. Murray, Jr., Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Chicago, Ill., for appellee; John Peter Lulinski, Michael B. Nash, Howard M. Hoffmann, Asst. U. S. Attys., of counsel.

Before CASTLE, Chief Judge, KERNER, Circuit Judge, and ESCHBACH, District Judge.[1]

---

1. Judge Jesse E. Eschbach is sitting by designation from the United States District Court for the Northern District of Indiana.

ESCHBACH, District Judge.

This is an appeal from the district court's dismissal, following an evidentiary hearing, of appellant Donnell Leonard Luster's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241 et seq., seeking his release from the United States Army.

On appeal, appellant raises the following issues: (1) whether his selective service file contained a basis in fact for his local board's and the state appeal board's classifying him I–A (available for military service) and refusing to classify him III–A (extreme hardship deferment), (2) whether his local board was under a duty to reopen his I–A draft classification and to consider it anew upon receipt of alleged new information of certain specific hardship conditions, and (3) whether he ever received a valid order to report for induction. The judgment of the district court will be affirmed.

The nature and time of the submission of the information before appellant's local selective service board require rather extensive examination of his selective service file, all of which is in evidence. After registering with the Selective Service System, appellant was classified I–A on March 20, 1964. Because he was enrolled as a full-time student, he was reclassified from I–A to II–S (student deferment).

On July 25, 1966, the board received appellant's letter seeking a review of his II–S classification because of his alleged sole support of his mother whom he alleged had "[r]ecently * * * sustained a permanent back injury which disabled her for life." On August 4, 1966, his mother submitted a certification of proof of illness to support his claim. This report from the University of Chicago Hospital and Clinics contained information that Mrs. Luster had suffered lower back and head injuries in a stairway fall in September 1963 and had sustained further injury to her back in a bus ac-

cident on March 8, 1965. However, its diagnostic conclusions were that Mrs. Luster suffered from no neurological or physical abnormalities.

On August 11, 1966, appellant returned SSS Form 118, Dependency Questionnaire, wherein he stated that his mother received no annual income and that he contributed 100 per cent of her annual support. His mother stated therein that she had become unable to work because of a 1963 accident, i. e., the stairway fall. His local board considered this new information and, because he had ceased being a full-time student, reclassified him I–A on September 7, 1966. On September 16, 1966, he renewed his request for a hardship deferment on the grounds of his mother's inability to live on his service pay in the event he were inducted. He requested forms so that his mother's doctor could confirm her health and also informed the board that he was again a full-time student. He was reclassified II–S on October 5, 1966.

Appellant filed an appeal from the denial of his request for a III–A deferment and requested a personal appearance before the board. At his personal appearance on November 2, 1966, appellant brought a physician's certificate that his mother did have a "psychoneurotic disorder" and that she was consequently unable to work. The local board, after considering his Dependency Questionaire of August 11, 1966 and interviewing appellant, unanimously voted that his II–S status remain and forwarded his file to the state appeal board. The appeal board, by a 5–0 vote on March 1, 1967, classified him II–S until August 1967.

Appellant's Current Information Questionnaire, SSS Form 127, returned on March 21, 1967, disclosed that he was no longer a full-time student. Consequently, on April 5, 1967 he was reclassified I–A, from which he filed a timely appeal. Accompanying a Dependency Questionnaire returned May 16, 1967, a physician certified that Mrs. Luster was unable to work because of recurrent back and leg

pain. Appellant appeared before his local board on July 5, 1967. The board's notes taken during this appearance indicate that he informed it that (1) his mother had not worked for one and one-half years, (2) his father died in 1958, (3) his mother received social security disability benefits, and (4) his sister lived at home and worked full time. The board reviewed all new evidence during its interview, unanimously maintained his I–A classification, and forwarded his file to the appeal board which, on October 4, 1967, again unanimously classified appellant I–A.

On October 23, 1967, appellant was sent SSS Form 252, Order to Report for Induction. On that same day, the local board received a letter from appellant appealing his I–A classification and noting, *inter alia*, that "although it has been hard I have managed, *with a little help from my sister* to support my mother. \* \* \*" (Emphasis added.) He added that as of that time his sister was pregnant. The board wrote appellant on October 30, 1967 that he had no further right of appeal from his I–A classification but that his "letter \* \* \* will be considered by the Local Board at their next meeting."

The local board did consider the new information on November 8, 1967, but voted not to reopen his classification and determined to have him report for induction as previously ordered. Appellant reported for induction but was found to be medically unacceptable, with the recommendation that he be reexamined in three months. On December 13, 1967, the local board voted to reclassify him I–Y and promptly notified him of his change of status.

On May 23, 1968, the board mailed him SSS Form 223, Order to Report for Armed Services Physical Examination. After being found medically acceptable for induction, on July 10, 1968, the board reclassified him I–A.

From his reclassification I–A, appellant filed a timely appeal, again requesting a hardship deferment but not re-

questing a personal appearance before the board. The board acknowledged this appeal on August 12, 1968, sent him SSS Form 118, Dependency Questionnaire, and asked him to supply the board with his 1967 Income Tax Return and a listing of the "other incomes of himself and dependent as well as a listing of expenses of both." On August 16, 1968, the board received a letter from a doctor who was treating appellant's mother stating that she was scheduled to undergo major surgery.

As of September 31, 1968, the board had not received the requested tax and expense information. On that date the board's records state: "All new evidence considered and file reviewed. Case not reopened. Forward to Appeal Board, Classification not changed by local board." This action was unanimous. The board then forwarded his file to the appeal board on September 20, 1968.

On September 26, 1968, the board received appellant's Dependency Questionnaire in which he listed his mother as his only dependent, stated that she was receiving $70 monthly income and that he contributed 80 per cent of her annual income, and that his sister, although living in his household, could not contribute to his mother's support. The statement did not include his income. In a signed statement, he added this his sister could not contribute to their mother's support because the sister had a dependent of her own. Appellant's mother stated in a signed statement that her medical bills were $80 monthly and that her daughter and 6-month old child were dependent upon appellant. On November 12, 1968, the appeal board unanimously classified appellant I–A.

On December 30, 1968, the board mailed appellant an Order to Report for Induction on January 28, 1969. On January 7, 1969, he personally visited the board to inquire whether the board had considered the information which he had submitted regarding his request for a hardship deferment. Pursuant to his inquiry, the executive secretary of the board requested authorization from the State Director of the Illinois Selective Service System to cancel appellant's induction order "due to the fact that the local board has not considered evidence that was submitted by the registrant after the Appeal Board's action and which should have been considered by the local board prior to issuance of Induction Order." On January 13, 1969, the board received a written request from appellant for an appointment to meet with it "because of additional information concerning [my] petition for hardship deferment. This proof is from * * * [the] Social Security Administration so I know there is no question as to it's [sic] legitimatcy [sic]." On January 13, 1969 the board also received authority to cancel appellant's induction order. This same day, the board wrote appellant to notify him that his induction order had been canceled "for the purpose of enabling the local board to consider further evidence you have submitted regarding your claim for Dependency."

Appellant appeared before the board on February 12, 1969. Notes taken by the board during this personal hearing of appellant read:

> "Registrant brought in letter from Dept. of Health, Education & Welfare indicating that mother has been receiving Soc. Sec. disability since April 1966. Registrant verifies that his sister is still living with the mother and is employed full time. Sister has illegitimate child but has done nothing to seek support from father of child."

In addition to this information, appellant also presented his 1967 Federal Income Tax Return which indicated that he claimed his mother as a dependent. He also represented that on his 1968 income tax return he would claim his infant nephew as a dependent and that although his sister was working, she was not earning enough to support either herself or her son.

The following day the local board informed the appellant by letter that (1) his file had been reviewed, (2) all new

evidence concerning his claim for a dependency deferment as well as information that he had submitted at the personal hearing had been considered, (3) by unanimous decision of the board his "file will not be reopened," and (4) "there is no change in classification warranted."

On February 26, 1969, the local board issued SSS Form 252, Order to Report for Induction on March 26, 1969. Appellant reported for induction, but was not inducted at that time. Rather, he was put on medical holdover at the induction center and was asked to submit statements from his doctors as to his medical condition. He complied with this request.

On May 9, 1969, he and the board received copies of Department of Defense Form 62, Statement of Acceptability, indicating his full acceptability for induction. In a letter dated May 16, 1969, the local board ordered him to report for induction into the Armed Forces on June 11, 1969. Appellant was inducted into the Armed Forces on June 11, 1969.

That same day he filed in the United States District Court for the Northern District of Illinois, Eastern Division, a petition for a writ of habeas corpus. After an evidentiary hearing, the court below dismissed the petition for writ of habeas corpus on July 2, 1969. On that same day, appellant filed notice of appeal.

I. APPELLANT'S SELECTIVE SERVICE FILE CONTAINED BASIS IN FACT FOR HIS I-A CLASSIFICATION

Appellant's first argument on appeal is that his local board and the state appeal board had "no basis in fact" for classifying him I-A and for denying his claim for a III-A (extreme hardship) deferment. *E. g.,* Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946); United States v. Freeman, 388 F.2d 246, 248 (7th Cir. 1967), reh. denied, (1968 en banc); United States v. Mohammed, 288 F.2d 236, 238 (7th Cir. 1961), reh. denied. Appellant fails to specify on what dates such allegedly illegal actions occurred. Presumably, he is referring to his classification I-A by his local board on July 10, 1968 and his classification I-A by the state appeal board on November 12, 1968.

On July 10, 1968, appellant's local board reopened his I-Y classification of December 13, 1967 and reclassified him I-A. On August 12, 1968, he appealed this classification and asked that he be classified III-A instead. On September 11, 1968, his local board considered the new evidence filed in support of his claim for a III-A deferment, determined not to reopen his I-A classification, and forwarded his file to the state appeal board on September 20, 1968. Pursuant to 32 C.F.R. § 1626.24(b) (1969), the state appeal board could only consider the information contained in the file received from the local board and general socioeconomic conditions. Thus, for the purposes of determining whether appellant's file contained any basis in fact for his I-A classification, the information contained in his file as of September 11, 1968 will be determinative.

■ Under the doctrine of *Estep* and its progeny, the scope of judicial review of a draft classification is limited to the narrow question of whether there was any basis in fact for the board's order. This court may not determine the weight of the evidence. So long as there is a basis in fact for the board's decision to classify the appellant I-A and to deny his request for a III-A deferment, this court's scope of review ends even if it were convinced that the board's decision was erroneous. Estep v. United States, *supra.*

■ Appellant's selective service file on September 11, 1968 indicated *inter alia* that (1) he claimed to be the sole support of his mother who received $70 monthly social security disability income and (2) his sister, who lived with him and his mother, was employed full time, had a young infant, and contributed to the support of his mother. In determining whether appellant should be granted an extreme hardship deferment, the

board could consider any dependency allowances paid by the Armed Services to dependents of servicemen. 50 App.U.S.C. § 456(h) (2) and 32 C.F.R. § 1622.-30(d) (1969). On the basis of these facts, the district court determined that the local board's action was not without a basis in fact. We agree.

■■ The burden is upon the registrant to establish his entitlement to any classification other than I–A. Carson v. United States, 411 F.2d 631, 633 (5th Cir. 1969); United States v. Carroll, 398 F.2d 651, 653 (3d Cir. 1968); United States v. Porter, 314 F.2d 833, 835 (7th Cir. 1963); 32 C.F.R. § 1622.1(c) (1969). Upon receipt of appellant's appeal of his I–A classification and request for III–A extreme hardship deferment on August 12, 1968, the local board mailed him an acknowledgment on the same day and indicated the specific information it wished him to provide with reference to his claim for a III–A classification. The board sent appellant SSS Form 118, Dependency Questionnaire, and a request for his 1967 income tax return and a listing of incomes and expenses of himself and his mother. One month later when the board considered his appeal and request for a III–A deferment on September 11, 1968, the board had received only a letter from appellant's mother's doctor indicating that she was scheduled to undergo major surgery. The fact that appellant had not complied with any of the board's requests in its letter of August 12, 1968 was before the board and could properly be considered by it in determining whether appellant should be classified III–A.

■ The only case which appellant cites in his brief on the basis in fact issue is Lewis v. Secretary, Dept. of the Army, 402 F.2d 813 (9th Cir. 1968), reh. denied. That case is distinguishable on its facts. In that case a registrant's III–A classification (extreme hardship because of dependent mother) was taken away and he was reclassified I–A. The court reversed the denial of the registrant's petition for writ of habeas corpus, stating:

"Our review of the record disclosed that the facts before the Board are not in dispute, and that there is *no significant difference between the facts before the Board when it [originally] classified appellant in III–A in 1964 and when it reclassified him in I–A in 1966.*" Id. at 818 (emphasis added).

It is well settled that reclassification of a registrant must be based upon some fact not considered in granting the original classification which would justify a change in classification. E. g., United States v. Pence, 410 F.2d 557, 562 (8th Cir. 1969); 32 C.F.R. §§ 1625.2, 1625.11 (1969). See United States v. Ransom, 223 F.2d 15 (7th Cir. 1955). The instant case does not involve a withdrawal of a III–A deferment which is not based upon any change in facts.

We hold that there was a basis in fact for the denial of appellant's request for a III–A classification and his classification I–A on July 10, 1968.

## II. LOCAL BOARD WAS NOT UNDER A DUTY TO REOPEN APPELLANT'S CLASSIFICATION

Appellant's second argument upon appeal is that the local board was under a duty to reopen his classification upon receipt of allegations by his mother that he was supporting his nephew and partially supporting his sister and that his mother's medical expenses were about $80 monthly.

■ There is no dispute as to the legal standard for determining whether the local board was under a duty to reopen appellant's classification. A local board is required to reopen a registrant's classification upon receipt of new information presenting facts not considered when he was previously classified, which facts, if true, would require or entitle him to reclassification, i. e., a prima facie case. United States v. Freeman, *supra* at 248, 249; United States v. Mohammed, 288 F.2d 236, 242 (7th Cir. 1961) (reh. denied); 32 C.F.R. §§ 1625.2

and 1625.4 (1969). Accordingly, a local board may properly determine not to reopen if either (1) the information presented by the registrant "fails to present any facts in addition to those considered when the registrant was [previously] classified" or (2) "even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in the registrant's classification." 32 C.F.R. § 1625.4 (1969).

■ There is no dispute as to what the board did in this case. When appellant brought to the board's attention on January 7, 1969 that it had not considered his Dependency Questionnaire filed on September 26, 1968, his induction order was canceled. On January 13, 1969, appellant requested in writing to meet with the board to discuss "additional information concerning petition for a hardship deferment." Although he had no right to such a personal hearing before the board, 32 C.F.R. 1624.1(a) (1969), the board granted him a personal hearing through courtesy. United States v. Mulloy, 412 F.2d 421, 423 (6th Cir. 1969); 32 C.F.R. § 1625.1(c) (1969). Granting such a personal hearing in no way constituted a reopening of appellant's classification. United States v. Mulloy, supra at 423, 424, 426. In fact, pursuant to 32 C.F.R. § 1625.4 (1969), the board notified him by letter that

"At the meeting of February 12, 1969 your file was reviewed and all new evidence concerning your claim for dependency was considered by the local board as well as information you submitted to them in a personal hearing. It was the unanimous decision of the board members that the file will not be reopened and there is no change in classification warranted. Therefore, your status remains unchanged."

■ The regulations *require* that the board consider only that written information which accompanies a registrant's written request for reopening. *See* 32 C.F.R. §§ 1625.2 and 1625.4 (1969). In

this case, however, the local board in its discretion chose to permit the appellant to appear personally and present evidence in addition to that contained on his Dependency Questionnaire of September 26, 1968. In determining whether the new information contained in this form and presented by appellant at this hearing warranted a reopening, it was entirely proper for the board to consider appellant's entire file and to consider any information in the file which would contradict or negate appellant's claims. *See* United States v. Mulloy, *supra* at 424–25; Woo v. United States, 350 F.2d 992, 997 (9th Cir. 1955) (Hamlet, J., dissenting on other grounds); United States v. Ransom, *supra*, 223 F.2d at 18; United States v. Burlich, 257 F.Supp. 906, 912 (S.D.N.Y. 1966); 32 C.F.R. § 1622.1(c) (1969).

■ What was the information not previously considered which was before the board when it made its decision not to reopen? The Dependency Questionnaire of September 26, 1968 disclosed the following new information: (1) Appellant stated that he owned an automobile and that his monthly obligations for utilities and car payment were $109 and (2) his mother noted in a signed statement that her medical expenses were $80 monthly and her daughter and grandchild were dependents of appellant. At his personal hearing on February 12, 1969, appellant also represented that on his 1968 federal income tax return he would claim his nephew as a dependent and that his sister, although working full time, did not earn enough to support herself and her infant son. The board's notes of the hearing, quoted above, indicate that appellant also told them that the father of his sister's child was not contributing to its support.

The board also knew that it had previously rejected his claim for a III–A deferment four times and that he had not complied with its written request of August 12, 1968 that he provide a statement of the incomes and expenses of himself and his mother. Moreover, there is no

indication from the record that he himself ever claimed that he was entitled to a III–A deferment because his induction would result in an extreme hardship to his sister and his nephew. To the contrary, in his Dependency Questionnaire of September 26, 1968, he claimed only his mother as a dependent and stated that his sister could not contribute to their mother's support because "she had another *dependent of her own* which [she] can barely take care of." (Emphasis added.) Furthermore, his reference in his request to meet with the board to provide "additional information concerning [my] petition for a hardship deferment" consisted of a letter from the Social Security Administration verifying that his mother had been receiving disability benefits since April 1966—a fact which the board knew as early as July 1967. Appellant admitted at the hearing below that he never told the board that he was paying his mother's medical bills.

This is not a case in which the local board refused to consider appellant's claims. Rather, it canceled his induction order and granted him a courtesy hearing so that he could present new facts which he claimed warranted his reclassification. Nearly all of the information which he presented concerned the financial status of his sister and nephew—neither of whom did he claim as dependents within the meaning of 32 C.F.R. § 1622.30 (1969). The information which he presented on the financial status of his mother was substantially the same as the board had before it when it denied his request for a III–A deferment in the fall of 1968. Moreover, he had conspicuously failed to supply the board with the requested income and expense statements for himself and his mother.

The new information which appellant presented did not constitute a prima facie case for a III–A deferment. Accordingly, because the new facts he presented did not warrant a reclassification, the board was not under a duty to reopen his file.

### III. APPELLANT'S INDUCTION ORDER WAS VALID AND PROPER

Appellant's third argument upon appeal is that the board's letter of May 16, 1969 which ordered him to report for induction on June 11, 1969 did not constitute a valid order to report for induction as provided for in 32 C.F.R. § 1632.1 (1969). There is no dispute that the letter of May 16, 1969 was not an SSS Form 252, Order to Report for Induction. Rather, the letter of May 16, 1969 informed appellant of the new time and place he was to report for induction pursuant to a previously issued, valid and outstanding induction order.

Pursuant to a valid order of induction issued on February 26, 1969, appellant reported for induction on March 26, 1969. At that time he was not inducted, however. Because of uncertainty as to whether he was medically acceptable, pursuant to Army Regulation 601–270, Ch. 2, Sec. 3, Para. 40(b)(6) (superseded June 1969), appellant's induction was delayed by the officials at the induction center. He was asked to submit statements from his doctor as to his medical condition. He did so, and he was subsequently found to be medically acceptable and was so notified by the board. By letter of May 16, 1969, appellant was notified to report for induction on June 11, 1969.

Appellant argues that the *only* way the date of his induction could have been "postponed", as that term is used in 32 C.F.R. § 1632.14(a) (1969), was in the manner specified in 32 C.F.R. § 1632.2 (a)–(c) (1969), which requires the board to issue him SSS Form 264, Postponement of Induction. Since the board did not issue him SSS Form 264, his induction was not postponed. Thus, the only way he could have been validly inducted, he concludes, was for the board to have issued him a new Order to Report for Induction, SSS Form 252. Therefore, according to appellant, its letter of May

16, 1969 was an ineffectual and invalid induction order.

Appellant's argument is defective in several respects. First, even if, arguendo, appellant should have been sent SSS Form 264, Postponement of Induction, as required by 32 C.F.R. § 1632.2 (b) (1969), such an error by the local board did not affect or abridge any of the appellant's substantial rights, nor did it prejudice him in any way. *See* United States v. Manns, 232 F.2d 709 (7th Cir. 1956). *Cf.* United States v. Isenring, 419 F.2d 975 (7th Cir. 1969). Appellant was completely informed on why his induction was being delayed. He does not suggest, nor does it appear, how in any way he was or could have been prejudiced by the board's not sending him SSS Form 264. Even if the board had sent him the Postponement of Induction form, the date therein specified for his subsequent induction could have been moved up in the discretion of the board. 32 C.F.R. § 1632.3(c) (1969).

Second, 32 C.F.R. § 1632.2(a)(c) does not specify the only manner in which the time for induction may be "postponed," as that term is used in 32 C.F.R. § 1632.14(a). *See* United States v. Sandbank, 403 F.2d 38 (2d Cir. 1968), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969). *Cf.* United States v. Wagner, 292 F.Supp. 1 (W.D. Wash.1967), aff'd. 403 F.2d 1 (9th Cir. 1968) (reh. denied). Regulation 1632.2 "Postponement of induction; general" refers to a postponement due to specified circumstances such as death or "other extreme emergency beyond registrant's control." This type of "formal postponement" ordinarily would result from a request initiated by the registrant himself.

The type of delay in the date of induction which occurred in this case was authorized by Army Regulation 601–270,

Ch. 2, Sec. 3, Para. 40(b)(6) (superseded June 1969) and comes within the terms of 32 C.F.R. § 1632.14(a) (1969) which provides that

> "If the time when the registrant is ordered to report for induction is postponed, it shall be the continuing duty of the registrant to report for induction upon the termination of such postponement and he shall report for induction at such time and place as may be fixed by the local board."

Appellant does not contend that his induction order issued February 26, 1969 was canceled or in any way invalid or invalidated. Therefore, the board's letter of May 16, 1969 was a notification, referred to in 32 C.F.R. § 1632.14(a), of the new date for his induction, which had been postponed but never canceled.

Third, appellant's argument overlooks Subdivision (d) of the very regulation upon which he relies. Regulation 1632.2 (d) (1969) provides that

> "A postponement of induction shall not render invalid the Order to Report for Induction (SSS Form No. 252) which has been issued to the registrant but shall operate only to postpone the reporting date and the registrant shall report on the new date without having issued to him a new Order to Report for Induction (SSS Form No. 252)." 32 C.F.R. § 1632.2(d) (1969).

Thus, a postponement under the circumstances of this case does not invalidate an induction order but, rather, operates only to defer the reporting date. Where there has been a postponement, the registrant is required to report without being issued a new order. Davis v. United States, 410 F.2d 89, 93 (8th Cir. 1969); United States v. Wagner, *supra.*

The order of the district court is affirmed.