**UNITED STATES of America ex rel. Chester Lawrence KUKLA, Petitioner-Appellant,**

v.

**Major Rollin G. GILLEN, Respondent-Appellee.**

**No. 71–1085.**

United States Court of Appeals, Seventh Circuit.

Oct. 19, 1971.

Rehearing Denied Nov. 1, 1971.

* Honorable Alfred T. Goodwin, United States District Judge, Portland, Oregon, sitting by designation.

Michael E. Povich, Cook County Legal Assistance Foundation, Harvey, Ill., for petitioner-appellant.

William J. Bauer, U. S. Atty., Michael D. Stevenson, Asst. U. S. Atty., Chicago, Ill., for respondent-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before CUMMINGS, KERNER, and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal is from the denial of a petition for writ of habeas corpus without the holding of the requested evidentiary hearing. We reverse.

Petitioner alleged that he was illegally inducted into the Armed Forces on November 25, 1970. He had been deferred as a student until his graduation from high school. On September 5, 1968, he was classified I–A. A few weeks thereafter, his father wrote Local Board No. 112 that he was disabled, deserted by his wife, and dependent on petitioner for his sole economic support. On October 25, 1968, petitioner sent a letter to his local board requesting an appeal.[1] The local

---

1. According to the transcript of the argument below, the district judge was impressed by the fact that petitioner's father, rather than petitioner, sought to ap-

board then mailed him a Dependency Questionnaire (Selective Service Form 118). Petitioner alleges that he "does not recall receiving" the questionnaire. On March 13, 1970, the appeal board voted to retain him in the I–A classification.

On June 3, 1970, the local board mailed petitioner an order to report for a physical examination. Five days thereafter, his mother wrote the local board that petitioner's father, who had become disabled in 1960 and had remained jobless until October 1966, had now abandoned his family, turned into a complete alcoholic, and was providing no support whatever to his family. She also wrote that she had become very ill and could not work any longer, that the family was heavily in debt and had lost its home and everything else it owned, and that petitioner had gone "to work full time to help out." The letter explained that the foregoing circumstances had affected her mental health and that she was consequently under a doctor's care. She concluded:

"At this time I depend entirely on my son for support. He carried me as a dependent on his job. I receive all my benefits such as hospital etc., through his company where he works. This is deducted at $29.14 per month from his pay check. If he has to go into the service this would be cancelled.

"My precriptions [sic] for medicine are expensive but it's something I cannot eliminate. It would be impossible for me to earn a living at this time. I couldn't possibly pay rent, utilities and my medical bills even if I could return to gainful employment.

"If he is inducted into the service I would be utterly destitute."

The local board did not then advise petitioner or his mother that the information submitted did not warrant the reopening of his classification.[2] On June 23, 1970, petitioner was advised that he had passed the Armed Forces physical examination. The next day he was mailed a Current Information Questionnaire (Selective Service Form 127), which he completed and promptly returned. A month later, he was mailed another Dependency Questionnaire "which he did not receive," according to the habeas corpus petition. On August 25, 1970, without having been previously notified of the board's apparent decision not to reopen on the strength of the June 8 letter,[3] he was ordered to report for induction on September 15, 1970.

---

peal petitioner's I–A classification. But the critical ground for our decision is that his mother made a timely hardship application on his behalf on June 8, 1970. Moreover, the Assistant United States Attorney explained to the district court that the petitioner had made a timely appeal, stating:

"I think he was notified that his father could not make an appeal, but, nevertheless, a notice was sent to the appeal board notifying them that Mr. Kukla, the two Mr. Kuklas, had requested an appeal.

"The son, a month later, forwarded a letter to the board elucidating his statement and then the file was then transmitted to the state board."

2. 32 CFR § 1625.4 provides:

"When a regisrant, any person who claims to be a dependent of a registrant, any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, or the government appeal agent files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required."

3. Petitioner argues that he was prejudiced by the board's failure to notify him of its decision not to reopen his classification

In response to the induction order, petitioner wrote to his local board requesting a reopening of his classification on the grounds of his mother's economic and psychological dependency on him as sole support. The local board postponed his induction, granted him a courtesy hearing on October 1, 1970, but refused to reopen his case.[4] On November 9, petitioner was again ordered to report for induction on November 25, 1970, when he did in fact submit to induction.

The nub of the petition is that through his mother's letter petitioner had presented his local board with a prima facie case for a III–A classification, thus entitling him to a reopening of his I–A classification and giving him a right to a personal appearance before his local board and a right to appeal therefrom. The applicable regulation provides that a registrant shall be placed in a III–A classification if his induction would result in extreme hardship to a parent who is dependent upon him for support. 32 CFR § 1622.30. Petitioner asserts that the local board had no requisite basis in fact for refusing to reopen his classification.

■ In the court below, the Government argued that petitioner's father's letter of September 25, 1968, received by the local board on September 30, 1968, contradicted his mother's above-quoted letter in that the father stated "My wife has left us and * * * I left in debts. I need him at home to help me." Being 20 months apart, the letters were not necessarily in conflict. Moreover, as petitioner advised the district court, he was not disputing the Selective Service System's denial of his claim for a III–A hardship deferment based on his fa-

ther's dependency. The key issue was whether his mother's letter of June 8, 1970, asserting her dependency, presented a prima facie case for a III–A classification, thus compelling the local board to reopen the case.

■ In urging affirmance, the Government relies on petitioner's failure to return the Dependency Questionnaires that were sent to him on October 31, 1968, and July 24, 1970. This failure is said to constitute a basis in fact for the board's failure to reopen petitioner's case. The failure to return the first questionnaire is entirely irrelevant to the local board's failure to reopen his classification after receiving his mother's letter of June 8, 1970. In our view, that letter contained sufficient dependency information to excuse the return of the July 24, 1970, Dependency Questionnaire, particularly since the Government has referred us to no statutory or regulatory provision compelling its return. Moreover, the local board gave no indication upon the record that the failure to return the Dependency Questionnaire "was a reason, either principal or contributive, for its decision." Petrie v. United States, 407 F.2d 267, 279 (9th Cir. 1969).

■ The Government also relies on a letter from petitioner's sister informing his local board that she was living with her mother and leaning on her brother for support, separated from her husband and in the process of getting a divorce, and unable to support her mother because her husband was bankrupt and because she would soon lose her $22.20 a week part-time job due to bill collectors. The letter concluded with the statement that petitioner's sister realized she was

---

because it deprived him of the opportunity to elicit from the board the deficiency of his case and then supply remedial information. Because of the view we take of this case, we need not decide this question. Cf. United States v. Ayres, 437 F. 2d 832, 835 (7th Cir. 1971), where no prejudice occurred because the petitioner had actual knowledge of the denial of his request for reopening prior to the date of his order to report.

4. Of course, if the local board erred in refusing to reopen petitioner's classification, the subsequent courtesy hearing could not have provided the board with a justification for its refusal. Mulloy v. United States, 398 U.S. 410, 417, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); see United States v. Freeman, 388 F.2d 246, 248 (7th Cir. 1967).

donating less than her share to help support the house. It is the Government's position that this letter somehow showed the ability of petitioner's sister to support the dependent mother, which, as one of the determinative factors in a hardship deferment case, justified the board's refusal to reopen.

The Government's contention must be rejected. The sister's letter stated unequivocally that the writer was unable to support her mother in the event her brother was drafted and that at the present time she was not contributing adequate support. We do not believe that the local board could have been justified, at the prima facie stage, in presumptuously delving beneath the face of the letter to speculate as to the ability of petitioner's sister to support her mother. Any such conclusions would only be proper, if at all, at the evaluation stage of the classification process, that is, after reopening. See Petrie v. United States, 407 F.2d 267, 278 (9th Cir. 1969).

■ In Mulloy v. United States, 398 U.S. 410, 415, 416, 418, 90 S.Ct. 1766, 1770, it was decided that where a registrant "has set out new facts that establish a prima facie case for a new classification, a board must reopen to determine whether he is entitled to that classification." Here registrant's mother made "nonfrivolous allegations of facts that have not been previously considered by his board, and that, if true, would be sufficient under regulation or statute to warrant granting the request for reclassification." As has been shown, the truth of those allegations was not "conclusively refuted by other reliable information in the registrant's file," so that the *Mulloy* rule compels the reopening of petitioner's classification.

■ The Government submits that our order in United States ex rel. Hick-

ey v. Gillen, No. 18971, decided June 24, 1971, requires that we find the local board in the instant case had a basis in fact for refusing to reopen. However, that case did not concern a refusal to reopen but rather involved a denial of a requested reclassification after reopening. There is a substantial difference in degree between the basis in fact test applied to the board's final classification decision and that applied to the board's refusal to reopen. Petrie v. United States, *supra*, 407 F.2d at 274. Whereas the former requires only some proof to support the board's evaluative determination, the latter means there must be either some defect in the registrant's prima facie case [5] or a conclusive refutation of the registrant's allegations by reliable information in his file. *Id.*; Mulloy v. United States, *supra*, 398 U.S. at 416, 90 S.Ct. 1766. In *Hickey*, the record "disclosed that there were at least two bases in fact" for the local board's evaluative determination not to classify Hickey II–A, even though we observed the board was not required to articulate the bases of its decision. In contrast, the record in the present case discloses no defect in the petitioner's prima facie case and no conclusive refutation of the allegations made in the June 8, 1970, letter of his mother.

We conclude that through his mother's letter of June 8, 1970, petitioner presented his local board with facts showing prima facie that extreme hardship would have resulted had he been inducted into the Armed Forces, so that the local board erred in refusing to reopen his classification and in ordering his induction. Consequently, we reverse the decision below and remand the case to the district court with the instruction that the writ of habeas corpus is to be granted.

Reversed and remanded.

---

5. In United States ex rel. Luster v. McBee, 422 F.2d 562 (7th Cir. 1970), we held the board was justified in refusing to reopen Luster's classification, for in that case there was a failure to make out a prima facie case. No new facts warranting a III–A classification had been submitted. *Id.* at 568–569.