**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alfred Edward McGEE, Defendant-Appellant.**

**No. 18670.**

United States Court of Appeals, Seventh Circuit.

Jan. 11, 1972.

Rehearing Denied Feb. 28, 1972.

Certiorari Denied June 12, 1972.

See 92 S.Ct. 2434.

Lawrence S. Galka, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Roger H. Dusberger, Asst. U. S. Atty., Chicago, Ill., William J. Bauer, U. S. Atty., Chicago, Ill., John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel, for plaintiff-appellee.

Before SWYGERT, Chief Judge, and KILEY and STEVENS, Circuit Judges.

KILEY, Circuit Judge.

Defendant McGee was convicted by a jury of wilfully and knowingly refusing to submit to induction into the Armed Forces [1] by refusing "to cooperate in induction processing." He has appealed. We affirm.

McGee was classified I–A by his local board and ordered to report for induction January 29, 1969. He reported as ordered, signed various documents,[2] but refused to take the symbolic step forward. On February 10, 1969 the Illinois State Director instructed the local board to cancel the outstanding January 29 induction order and recommended reopening of McGee's classification.

On March 11, 1969 the local board again classified McGee I–A. He requested an appeal, and after conferring with an appeal agent on April 14 asked for, *inter alia*, a III–A "extreme hardship" classification.[3]

In support of his hardship claim McGee filed a Dependency Questionnaire, among other forms, claiming as his dependent a married sister, deserted by her husband, who, with her four small children, then lived in the family home with her parents, a sister and defendant McGee. At the board's request McGee filed copies of his own, and his father's, 1968 income tax returns. He claimed, in the Questionnaire, that he contributed half of his sister's annual income. The board on May 14 wrote McGee that it had "reviewed all evidence" and had unanimously decided against reopening, that his I–A classification continued in

1. 50 U.S.C.App. § 462.

2. Statement of Personal History; Acknowledgment of Service Obligation; Armed Forces Security Questionnaire; Report of Medical History and Work Sheet for DA Form 41.

3. 32 C.F.R. § 1622.30(b) (2) (1969) provides in pertinent part:
   In Class III—A shall be placed any registrant whose induction into the

armed forces would result in extreme hardship (1) to his wife, divorced wife, child, parent, grandparent, brother, or sister who is dependent upon him for support, or (2) to a person under 18 years of age or a person of any age who is physically or mentally handicapped whose support the registrant has assumed in good faith: . . ..

effect, and that his file was "being sent to the appeal board."

The appeal board on May 21 unanimously confirmed McGee's I–A classification. On May 27 the board ordered him to report for induction. The next day that order was superseded by another order directing him to report for induction June 11, 1969. He reported, but failed to complete and sign the standard processing documents. His indictment —that he "refuse[d] to submit . . . in that he refused to cooperate in induction processing"—his trial and conviction followed.

## I.

McGee contends that the information supplied to the board in support of his III–A claim required reopening of his I–A classification. The question is therefore whether his request presented a sufficient prima facie claim for the hardship reclassification to compel a reopening of his I–A classification. Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970).

A registrant states a valid prima facie case for a III–A classification if he makes non-frivolous allegations of facts that have not been previously considered by his board, and which, if true, would establish that his induction would result in "extreme hardship" to his dependents, unless the truth of those facts was conclusively refuted by other reliable information in the file. Mulloy, at 416, 90 S.Ct. 1766; 32 C.R.F. § 1622.30 (b) (2).

No case cited or found sets explicit standards in determining whether a prima facie claim for a III–A "extreme hardship" deferment has been presented to a local board. The statute authorizes the President to prescribe regulations for the deferment of registrants with "dependents upon them for support." [4] The only standard in the regulation is "extreme hardship." [5]

Each case has its own facts and the "facts" presented control the decision. Nevertheless, in determining whether a valid III–A prima facie extreme hardship claim is alleged, the following considerations are in order: the degree of need of the claimed dependent; the nature of the need; the extent of the registrant's contribution to the need; the lack of a viable alternative source of contribution to the dependent's support; and the degree of distress resulting to dependent from loss of registrant's contribution.[6]

Here the Dependency Questionnaire and other supporting documents submitted by McGee stated that in 1968 he and his father contributed the greater part of their earnings to support McGee's dependent sister who had been abandoned by her husband. However, the supporting documents also show that McGee himself contributed $300 of his annual $4,724 salary to his sister's annual income of $600; that neither McGee nor his father had claimed the dependent on their 1968 income tax returns; that the sister and her four children had lived with McGee and his parents at their home during the preceding nine months; and that the sister was presently looking for an apartment.

Taken as true, the relevant substance of the "new facts" is that McGee contributed to his sister a little more than 7% of his net salary—after income taxes—of $4,067. His only expense, viewed most favorably to him, was $600 per year rent. It is not clear whether his sister's income of $600 was from contributions of McGee and his father. However, there is nothing to show why the dependent could not have increased

---

4. 50 U.S.C. App. § 456(h) (2).

5. See note 3, supra.

6. See United States ex rel. Kukla v. Gillen, (decided October 19, 1971, 7th Cir.), 611 F.2d 452; Landau v. Allen, 424 F.2d 668, 671 (6th Cir. 1970); United States ex rel. Luster v. McBee, 422 F.2d 562, 569 (7th Cir. 1970); Howze v. United States, 409 F.2d 27 (9th Cir. 1969); Rheingans v. Clark, 314 F.Supp. 1398, 1401–1402 (N.D.Cal.1968); Brede v. Allen, 311 F.Supp. 599, 603 (N.D. Ohio 1969).

her income from part-time work while her mother cared for the children. Nor is there anything to show that she needed an apartment or who would pay the rent if she leased one. Finally, McGee himself noted that if drafted he would continue his support to his sister. We hold that the facts as alleged by McGee, and taken as true did not entitle him to a III–A hardship exemption.

## II.

On May 27, 1969, about two weeks after the board's refusal to reopen, the local board wrote the State Director for authority to increase the "June 11th induction call" to include McGee who would be "26 years of age on August 10th, 1969." McGee contends that the board's request to increase the induction call for that month conflicted with the regulations [7] which required that "delinquents" and "volunteers" be called first. He argues that this shifted the burden to the government to justify including him in the call. McGee concedes that ordinarily a presumption of regularity establishes proper order of the call, but relies on United States v. Baker, 416 F.2d 202 (9th Cir. 1969), to sustain his contention that including him in the call because of his age violated the mandate of 32 C.F.R. § 1631.7. He argues that the district court erred in presuming the call was regular instead of requiring proof as it should have done.

*Baker* does not support McGee's argument, since there the registrant proved by "direct evidence" that six named registrants should have been called before him and that had they been ordered to report he would not have been called. Here McGee presented no evidence at the trial directly or indirectly that

would remove from him the burden of proving the order of the call was irregular. The district court did not err in invoking the presumption of regularity that the call was proper. Yates v. United States, 404 F.2d 462, 466 (1st Cir. 1969).

Nor do we find merit in McGee's contention that the court prevented him from proving irregularity of the call by denying motions for a continuance and a reopening of proofs. McGee's motions were made after both sides had rested. McGee's attorney did not touch on the proof—subject of the motion—either in cross-examination of the supervisor of draft records at McGee's local board, or in direct examination of the supervisor as a defense witness, even though she was the proper person from whom to elicit the relevant testimony. See *Yates*, at 466. There was no abuse of discretion in the rulings under these circumstances. *Id.* And there is nothing in McGee's brief or in the transcript pages referred to which persuades us that McGee's counsel was unduly restricted in cross-examination of witnesses in attempting to make the proof.

Finally on this point, we find no abuse of discretion in the court's limiting cross-examination to the scope of direct testimony of the government's witnesses. United States v. Bender, 218 F. 2d 869, 873 (7th Cir. 1955).

## III.

The local board on May 27, 1969 wrote McGee to report for induction June 11. On May 28 the board wrote him that the order of May 27 was invalid and it enclosed an SSS Form 252 "which is valid and in effect," ordering him to report June 11. These orders, McGee argues, together with the origi-

---

7. 32 C.F.R. § 1631.7(b) (1969) provides in pertinent part:

. . . Such registrants shall be selected and ordered to report for induction in the following order:

(1) Delinquents who have attained the age of 19 years in the order of

their dates of birth with the oldest being selected first.

(2) Volunteers who have not attained the age of 26 years in the sequence in which they have volunteered for induction.

(3) Registrants in the designated age group; . . . . .

nal order to report on January 28, 1969, caused him to be confused, so that he was incapable of the wilful conduct charged in the indictment.

However, McGee reported on the day appointed, presumably unconfused by the two unambiguous orders. The government has made clear to us that the board wrote the May 27 letter under a misapprehension that the January order had not been cancelled, but that the next day corrected the mistake by sending the formal SSS order to report. The decision in United States v. Bowen, 414 F. 2d 1268 (3rd Cir. 1969), is of no aid to McGee. There the court *sua sponte* noted the confusing nature of the board's letter which could well have made Bowen "uncertain about the continuing validity of the notice of induction." *Id.* at 1270. There is no merit in McGee's argument that he was "confused."

#### IV.

■ McGee next argues that when he appeared at the reporting station June 11, he was never asked to step forward, and that this deprived him of the "last clear chance" to change his mind and submit. At the induction center, however, McGee would not sign papers which were part of the standard process preliminary to induction and which he was requested by the induction officer *to fill out.* He had the duty to comply with the request. *See* Billings v. Truesdell, 321 U.S. 542, 557, 64 S.Ct. 737, 88 L.Ed. 917 (1944); 32 C.F.R. § 1632.-14(b).[8]

■ McGee's order to report carried more than a duty to appear. He also had the duty to go through the "process which constitutes induction." United States v. Collura, 139 F.2d 345 (2nd Cir.

1943). It was no excuse for McGee's failure that he had signed the processing papers when he reported earlier in January, 1969, and was then told that he would not have to sign any more papers. He was in no position to impose his own terms—that he wanted "to eliminate paperwork"—as his trial testimony indicates. *Id.* at 346. And he had no option to rely upon his earlier signature of papers. That earlier order was cancelled and the processing nullified. His file justifiably notes that he was "uncooperative" in not signing the papers. That he was told to go home upon his failure to sign the papers did not deprive him of any right to an opportunity to take the symbolic step forward.

The decision in Chernekoff v. United States, 219 F.2d 721 (9th Cir. 1955), is inapposite. There the registrant had presumably completed the processing but had then stated he would not submit. There was in *Chernekoff* no lack of cooperation in the standard preliminary processing, whereas here the basis of the indictment was failure to cooperate in induction processing. And it is highly improbable that McGee would have taken the step had he been given what he claims as his "last clear chance." He had signed papers in January but refused to take the step. He would not sign the papers in June, but now contends he might have done so if given the chance. Yet after leaving the induction office he says that he went to the local board "to straighten out" his problems. This indicates that he never accepted the obligation to cooperate with the induction process.

■ We conclude that by being uncooperative in failing to sign the papers preliminary to the taking of the step,

---

8.  32 C.F.R. § 1632.14(b) reads in pertinent part as follows:

> Upon reporting for induction, it shall be the duty of the registrant . . . (3) to appear at the place where his induction will be accomplished, *(4) to obey the orders of the representatives of the Armed Forces while at the place where his induction will be ac-*

*complished, (5) to submit to induction.* . . . (Emphasis added.)

50 U.S.C.App. § 462(a) imposes a criminal penalty on a selective service registrant for failure "to perform any duty required of him under or in the execution" of the Act or "rules or regulations made pursuant thereto."

McGee refused to submit to induction as charged in the indictment. *See* United States v. Mansavage, 178 F.2d 812, 818 (7th Cir. 1949).

## V.

 McGee also claims that he was not given warning of the consequences of his failure to cooperate as required by army regulation, and that he was prejudiced as a result. A showing of prejudice is needed to validate that claim. Briggs v. United States, 397 F.2d 370, 373 (9th Cir. 1968). In *Briggs* there was denial of physical inspection at the induction and the court thought the denial to be prejudicial. *Id.* at 374. We are not persuaded that McGee was not warned and we presume he was, but if he was not we cannot find any prejudice was suffered by him. He admitted that he was read the warning "twice" in January.

## VI.

We treat as frivolous McGee's contention that there was no proof that he committed a crime because there is no evidence he was ordered to do anything he refused to do. And we find without merit his claim that the Delinquent List—included in his file, with other documents pertaining to his SSS history—stating, as to him, under column Remarks, "Uncooperative," is prejudicial hearsay evidence introduced at his trial. He cannot show prejudice because there is ample other evidence, including his own testimony, that he was uncooperative.

Finally, we reject McGee's claim of error in a given instruction which he argues is defective for assuming that he refused to complete forms. That was the basis of the charge that he refused to submit to induction and there is evidence in the record justifying the instruction.

Affirmed.