**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Weldon Joel LEWIS, Defendant-Appellant.**

**No. 72–1083.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1972.

Decided July 9, 1973.

Rehearing Denied Aug. 6, 1973.

Certiorari Denied Dec. 3, 1973.
See 94 S.Ct. 582.

---

Michael P. Toomin, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck and Glynna W. Freeman, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.

SWYGERT, Chief Judge.

Weldon Joel Lewis appeals from his conviction on an indictment charging him with failure to report for induction in violation of 50 App. U.S.C. § 462. He argues that the trial court erred in failing to recognize that his local board *de facto* reopened his I–A classification during its consideration of a post-induction claim of conscientious objection, thereby nullifying his order to report. In addition, Lewis contends that one or more errors of procedure were committed by his board in connection with a claim for III–A status submitted by his father.

Lewis held a I–A classification on March 24, 1966, when ordered by his board to appear for a physical examination. After the examination, and in light of the fact that Lewis was then serving a sentence of probation on a conviction for criminal damage to property, the board reclassified him I–Y. Approximately three years later, on May 26, 1969, the board ordered Lewis to take another examination after its receipt of a current information questionnaire indicating Lewis' current employment as a salesman and his upcoming enrollment in college as a full-time student. A week prior to the date of this second examination, Lewis' father, Reverend Ward V. Lewis, mailed to the board a request for an "appeal" from the I–Y classification of his son. The request, in the form of a four-page letter, was for all practical purposes a statement that Lewis was needed at home.* The board made no immediate response to the plea, and Lewis apparently reported for his examination.

* Clerk

Draft Board #107
Forest Park, Ill.
Dear Clerk,

Our son, Weldon Lewis, is to appear the 25th of July for his physical. He is classified I–Y.

We would like to make an appeal. He has an endebtedness to us of about $8000.-00 which he is paying back at a rate of $150.00 per month, more when he can. He has endeavored to go to college and complete his education. In order to do this, he has had to work days and go to school at night. He had to have a car, so we signed for him and he is paying us back. Tuition and books had to be paid in advance. He had to quit work for a while on account of a hernia operation. Insurance paid only part of this expense.

In the meantime, we are still paying Doctor and funeral expenses for my wife's mother. She was in the hospital and had an operation. Her insurance wasn't enough to cover. We have paid up the hospital and have to still pay the Doctor and funeral expenses.

Two older sons served in the Army and Navy. One son is married and cannot help us. The other son was nearly killed in an accident. He has hospital and specialist bills to pay.

He was in Hines Hospital after he got out of the other hospital for a year. He still has to have plastic surgery. He has only recently been able to go to work, so he is unable to help us.

My wife and I are both working, trying to meet our financial obligations. We have a mortgage payment on our home of $90.00 per month, a loan of $130.00 per month, loan for $40.00 per month, and a car payment of $60.00 per month—total $320.00. This is above currently monthly expense of runing a home—board and transportation expense.

My wife and I are nearly 60 years old and must get these bills taken care of before we are forced to retire.

My wife may not be able to work much longer as she has arthritis in both knees and can hardly walk. She has to go to the Doctor every month for shots.

My income is net $90.00 per week and my wifes is $64.00 per week. I had to give up my church and go to work in order to make ends meet.

Weldon helps us with these payments. He is handy doing necessary repairs and painting about the house so we don't have to hire it done.

Please give this your prompt consideration. Thanking you I am—

Rev. Ward V. Lewis

Some four months later, on November 4, 1970, the board minutes reveal that Lewis was sent a dependency questionnaire (Form 118). The fate of this document is unknown; neither his selective service file nor evidence adduced at trial indicate that Lewis or his father received the form or returned it to the board. On January 20, 1970, Lewis was deemed acceptable for induction and reclassified I–A, pursuant to which he received an order to report for induction on April 29, 1970. He failed to report. Instead, on April 30, he filed a completed form for conscientious objection (Form 150), along with a request for a courtesy interview and a postponement of his induction date. A postponement was granted and Lewis appeared before the local board for an interview. After the meeting, the board rejected his claim, stating:

(1) The board feels that the registrant's beliefs are based [upon] personal moral codes.

(2) Local board determines that there is no change in the registrant's status resulting from circumstances over which he had no control.

Lewis was advised of this disposition the following week and ordered to report for induction on July 15, 1970. He reported as ordered, but refused to submit to induction by reason of his "moral belief as a conscientious objector to all wars."

The instant prosecution followed. At trial, the sole defense presented was that Lewis was a valid conscientious objector. No mention was made of the letter sent by Reverend Lewis nor of the Form 118 returned in response by the board. Lewis was found guilty of having violated 50 App.U.S.C. § 462.

## I

The primary contentions made before this court relate to the "appeal" letter sent to the board by Reverend Lewis, which the defendant characterizes as a request for a reopening of his classification. It is argued that the four-month lag between receipt of this document by the board and the subsequent mailing of the Form 118, together with the complete absence of any evidence in Lewis' file that the board considered the claim, requires us to find that the board never saw the letter. This would constitute reversible error under United States v. Ford, 431 F.2d 1310 (1st Cir. 1970), and United States v. Prescott, 301 F.Supp. 1116 (D.N.H.1969). A second, alternative contention is that the board considered the request, but failed to state reasons for denying it in violation of 32 C. F.R. § 1625.4. Lastly, Lewis argues that the letter states a *prima facie* case for a III–A deferment, and that the board erred in failing to reopen his classification, thereby rendering Lewis' conviction invalid under United States ex rel. Vaccarino v. Officer of the Day, 305 F.Supp. 732 (S.D.N.Y.1969).

We agree that the letter, though on its face termed an "appeal," is in substance a request for a reopening of Lewis' classification. United States v. Vincelli, 215 F.2d 210, 212 (2d Cir. 1954); United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3d Cir. 1953). Yet we have difficulty in accepting most of his related contentions because Lewis failed to raise them before the trial court.

Rule 52(b) of the Federal Rules of Criminal Procedure provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In interpreting this provision, we have held it applicable to situations where counsel for the first time on appeal raises a defense which he failed to make below. United States v. Jones, 204 F.2d 745, 748 (7th Cir. 1953); *see* Tatum v. United States, 88 U.S.App. D.C. 386, 190 F.2d 612, 614–615 (1951). However, not all unraised contentions qualify for appraisal on appeal; absent unusual circumstances, only newly-raised questions of law untainted by factual ambiguity so qualify. *Compare* Alexander v. United States, 415 F.2d 1352

(7th Cir. 1969); United States v. Millpax, Inc., 313 F.2d 152 (7th Cir. 1963); and Glass v. United States, 277 F.2d 566 (7th Cir. 1960); *with* United States v. Lepinski, 460 F.2d 234 (10th Cir. 1972); United States v. Cassell, 452 F.2d 533 (7th Cir. 1971); United States v. Jones, 204 F.2d 745 (7th Cir. 1953).

■ Turning to the first and second of Lewis' contentions, we hold that they cannot be raised here. No unusual circumstances militate in favor of exempting Lewis from the rule of preclusion adverted to above. *See* Altom v. United States, 454 F.2d 289, 292 (7th Cir. 1972) ("The defendant on appeal makes no claim that his representation at trial was inadequate. His counsel below presented a vigorous defense."); Borroto v. United States, 338 F.2d 60 (5th Cir. 1964). Moreover, neither contention is free of unresolved questions of fact. The first contention, indeed, is entirely unproven; we cannot accept Lewis' invitation to infer that his board's four-month delay in sending Lewis a Form 118 is conclusive proof that the board clerk withheld the appeal letter from the board's view. The second contention is similarly defective. We do not know whether Lewis or his father received the Form 118, and, if so, whether they reasonably failed to interpret its mailing as notice from the board that the father's letter did not state a *prima facie* claim for deferment. On this limited record we decline to hold, as we otherwise might, that mailing of the Form 118 to Lewis and his father was sufficient compliance with the notification requirement of 32 C.F.R. § 1625.4.

■ We do, however, reach Lewis' third contention. If his father's letter presented a *prima facie* claim for a III–A deferment, then the board's failure to reopen comprises error sufficient to require reversal of the instant conviction. There is no unresolved factual question relating to Lewis' failure to exhaust administrative remedies; he had no right of appeal from the board's decision not to reopen his case. Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); United States v. Allen, 459 F.2d 563 (9th Cir., 1972); United States ex rel. Miller v. Eberhardt, 324 F.Supp. 961 (N.D.Ga.1971). Nor is he likewise disabled by his apparent failure to complete the Form 118 and return it to his board. *See* United States ex rel. Kulka v. Gillen, 452 F.2d 611, 614 (7th Cir. 1971).

■ We thus confront the issue of whether the appeal letter states a case *prima facie* entitling Lewis to a III–A deferment. A statement so qualifies when it sets forth nonfrivolous allegations of facts which, if true, establish that the registrant's induction would result in "extreme hardship" to his dependents, unless the truth of those facts is refuted by other reliable information in the file. United States v. McGee, 460 F.2d 1287 (7th Cir., 1972); *see* 32 C.F.R. § 1622.30(b)(2). Since Lewis' file contains no material adverse to his III–A claim, we deal solely with the factual matter set out in the appeal letter.

■ The standards to be employed in assessing that letter were recently set forth by this court in United States v. McGee, *supra*:

Each case has its own facts and the 'facts' presented control the decision. Nevertheless, in determining whether a valid III–A prima facie extreme hardship claim is alleged, the following considerations are in order: the degree of need of the claimed dependent; the nature of the need; the extent of the registrant's contribution to the need; the lack of a viable alternative source of contribution to the dependent's support; and the degree of distress resulting to dependent from loss of registrant's contribution.

Measured by these criteria, the allegations of the appeal letter fail to state a *prima facie* case of "extreme hardship."

■ While we are in agreement that the Lewis' letter should not be judged by the "strict standards medieval courts applied to pleadings of barristers," United States v. Saunders, 467 F.2d 675 (4th

Cir., 1972), we cannot fail to note that Reverend Lewis omits from his letter any reference to financial dependence upon his son by himself and his wife, much less an allegation that the induction of his son would result in extreme hardship to them. He points out merely that "Weldon helps us with [loan] payments," and that Lewis "is handy doing necessary repairs and painting about the house so we don't have to hire it done." *Compare* United States v. Saunders, *supra*; United States ex rel. Kukla v. Gillen, *supra*. Furthermore, the facts cited in the letter permit no inference of extreme hardship. Reverend Lewis refers to a monthly indebtedness of $320.00, excluding costs of board and transportation. Yet the income figures cited in the letter indicate a combined parental income of at least $500.00 monthly. Admittedly, Lewis' avowed monthly contribution of $150.00 would increase this figure by thirty percent, but a deprivation of extra income fails to constitute extreme hardship if Lewis' parents were otherwise able to meet their expenses. We do not understand United States ex rel. Vaccarino v. Officer of the Day, *supra*, to state a contrary position. The facts that both parents would eventually be "forced to retire," and that Lewis' mother may not have been "able to work much longer as she . . . [had] arthritis," would have significance only upon the happening of the suggested contingency; the letter fails to allege that either event would likely occur during the pendency of Lewis' term of service.

We conclude that the board was well within the proper limits of its discretion in refusing to reopen Lewis' classification, and in insisting upon more detail in support of his III–A claim by mailing him a Form 118. This case is not comparable to United States v. Saunders, *supra*; United States v. Allen, *supra*; United States ex rel. Kukla v. Gillen, *supra*; United States v. Foster, 439 F.2d 29 (9th Cir. 1971); United States v. Grier, 415 F.2d 1098 (4th Cir. 1969); Petrie v. United States, 407 F.2d 267 (9th Cir. 1969); or Lewis v. Secretary, Dep't of the Army, 402 F.2d 813 (9th Cir. 1968). Cases far closer on their facts are United States v. McGee, *supra*; Weissman v. Officer of the Day, 444 F.2d 1326 (2d Cir. 1971); Winfield v. Riebel, 438 F.2d 271 (6th Cir. 1970); United States ex rel. Rasmussen v. Commanding Officer, 430 F.2d 832 (8th Cir. 1970), and United States ex rel. Luster v. McBee, 422 F.2d 562 (7th Cir. 1970).

## II

We also reject Lewis' argument that his local board *de facto* reopened his classification after considering and rejecting his post-induction claim of conscientious objection. In support of its disposition, the board reasoned that Lewis' beliefs were "based [upon] personal moral codes," and that Lewis' change in status failed to emanate from factors beyond his control.

Analogous circumstances formed the basis of a similar claim in United States v. Jones, 447 F.2d 589 (7th Cir. 1971), where we ruled that Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), barred a board reopening where a registrant's late claim of change in circumstance was found to result from factors within his control. *See* Wright v. Ingold, 445 F.2d 109 (7th Cir. 1971). *Jones* directly disposes of Lewis' post-induction reopening claim.

The judgment of conviction is affirmed.